FILED
U.S. DISTRICT COURT
2002 OCT 24  PM 3:35

SOUTHERN DISTRICT
INDIANAPOLIS

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

_____ X

RODERICK W. RUSSELL, on Behalf of      :
Himself and a Class of Persons Similarly   :
Situated, and on Behalf of the ConsecoSave  :
Plan,                                   :
                                        :
            Plaintiff,                  :    Case No.
                                        :
      v.                                :    CLASS ACTION
                                        :
CONSECO, INC., CONSECO SERVICES,   :    COMPLAINT FOR BREACH OF
LLC, STEPHEN B. HILBERT, ROLLIN M.  :    FIDUCIARY DUTY AND VIOLATION
DICK, GARY C. WENDT, WILLIAM J.     :    OF ERISA DISCLOSURE
SHEA, CHARLES B. CHOKEL and JOHN   :    REQUIREMENTS
DOES 1-30,                              :    1:02 -CV- 1639 LJM
                                        :
            Defendants.                 X
_____

**COMPLAINT**

Plaintiff Roderick W. Russell, on behalf of himself and on behalf of the ConsecoSave

Plan (hereinafter referred to as the "Plan"), and on behalf of a class of similarly situated

participants and beneficiaries of the Plan (the "Participants"), by his attorneys, allege the

following for his Complaint (the "Complaint"):

**NATURE OF ACTION**

1.      Plaintiff, who was a Participant in the Plan during the time period relevant to this

Complaint, brings this civil enforcement action under Section 502(a) of the Employee Retirement

Income Security Act ("ERISA") (29 U.S.C. § 1132(a)), for plan-wide relief on behalf of the Plan,

and on behalf of a class consisting of (a) the Plan, and (b) all current and former Participants in

the Plan for whose individual accounts the Plan held shares of common stock of Conseco, Inc. at

any time from April 28, 1999 to the present (the period from April 28, 1999 to the present being

hereinafter referred to as the "Class Period"). Excluded from the Class are Defendants herein,

officers and directors of Defendant Conseco, Inc. (Conseco, Inc. and all of its subsidiaries being

hereinafter collectively referred to as "Conseco" or the "Company"), members of their immediate

families, and the heirs, successors or assigns of any of the foregoing. Plaintiff brings this action

on behalf of the Plan and the Class pursuant to § 502(a)(2) and (3) of the Employee Retirement

Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(2) and (3). As more fully set forth below,

Defendants breached their fiduciary duties to the Plan and the Participants, including those

fiduciary duties set forth in ERISA § 404, 29 U.S.C. § 1104, and Department of Labor

Regulations, including 29 C.F.R. 2550. Defendants breached their fiduciary duties to the Plan

and the Participants in various ways, including, but not limited to, (i) misrepresenting and failing

to disclose material facts to the Plan and the Participants in connection with the administration of

the Plan; (ii) failing to exercise their fiduciary duties to the Plan and the Participants solely in the

interests of the Participants and their Beneficiaries for the exclusive purpose of providing

benefits to Participants and their Beneficiaries; (iii) failing to manage the Plan's assets with the

care, skill, prudence or diligence of a prudent man under the circumstances and imprudently

failing to diversify the investments in the Plan so as to minimize the risk of large losses; and  (iv)

permitting the Participants to continue to elect to invest their retirement monies in Conseco

common stock when it was imprudent to do so and when the Participants were not provided with

timely, accurate and complete information concerning the Company as required by applicable

law. As a result of these wrongful acts, pursuant to ERISA § 409(a), 29 U.S.C. § 1109(a),

2

Defendants are personally liable to make good to the Plan the losses resulting from each such breach of fiduciary duty.  Plaintiff also seeks equitable relief.

## JURISDICTION AND VENUE

2.    Plaintiff's claims arise under and pursuant to ERISA § 502, 29 U.S.C. § 1132.

3.    This Court has jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

4.    Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because this is a District where the Plan were administered, where breaches of fiduciary duty took place and where one or more Defendants reside or may be found.

## THE PARTIES

5.    Plaintiff Roderick W. Russell is a resident of the State of Louisiana.   Plaintiff was an employee of Conseco (or a subsidiary or division of Conseco) from approximately February of 1999 until May of 2001 and invested certain of his retirement monies in Conseco common stock by selecting the Conseco Stock Portfolio and/or other Conseco investment funds as investment options under the Plan.  Plaintiff held shares of Conseco common stock in his retirement account from approximately August of 1999 to the present.

6.    Conseco is incorporated under the laws of the State of Indiana and maintains executive offices in Indianapolis, Indiana.  Conseco was at all times relevant a financial services holding company with subsidiaries operating throughout the United States.  At all times relevant to this Complaint one of Conseco's most significant subsidiaries was Conseco Finance Corp., a wholly owned subsidiary of Conseco previously known as Green Tree Financial Corporation ("Green Tree").

3

7.      Conseco Services, LLC (hereinafter "CSL") is a wholly owned subsidiary of Conseco. At all times relevant CSL was the Sponsor of the Plan. CSL was also the Plan Administrator with respect to the Plan.

8.      At certain times relevant to this Complaint, Defendant Stephen B. Hilbert ("Hilbert") was Conseco's Chief Executive Officer and acted as a fiduciary with respect to the Plan. The claims asserted in this Complaint against Defendant Hilbert are asserted for only that period of time during which Defendant Hilbert served as Conseco's Chief Executive Officer and/or otherwise acted as a fiduciary with respect to the Plan.

9.      At certain times relevant to this Complaint, Defendant Rollin M. Dick ("Dick") was Conseco, Inc.'s Chief Financial Officer and acted as a fiduciary with respect to the Plan. The claims asserted in this Complaint against Defendant Dick are asserted for only that period of time during which Defendant Dick served as Conseco's Chief Financial Officer and/or otherwise acted as a fiduciary with respect to the Plan.

10.     At certain times relevant to this Complaint, Defendant Gary C. Wendt ("Wendt") was Conseco's Chief Executive Officer and Chairman of the Board of Directors of Conseco and acted as a fiduciary with respect to the Plan. Defendant Wendt succeeded Defendant Hilbert as Conseco's Chief Executive Officer and resigned from that position on or about October 3, 2002. The claims asserted in this Complaint against Defendant Wendt are asserted for only that period of time during which Defendant Wendt served as Conseco's Chief Executive Officer and Chairman of the Board of Directors of Conseco and/or otherwise acted as a fiduciary with respect to the Plan.

11.     At certain times relevant to this Complaint, Defendant William J. Shea ("Shea")

4

was Conseco's President and acted as a fiduciary with respect to the Plan. The claims asserted in this Complaint against Defendant Shea are asserted for only that period of time during which Defendant Shea served as Conseco's President and/or otherwise acted as a fiduciary with respect to the Plan.

12.     At certain times relevant to this Complaint, Defendant Charles B. Chokel ("Chokel") was Conseco's Executive Vice President and Chief Financial Officer and acted as a fiduciary with respect to the Plan. Defendant Chokel succeeded Defendant Dick as Conseco's Chief Financial Officer and resigned from that position on or about March 6, 2002. The claims asserted in this Complaint against Defendant Chokel are asserted for only that period of time during which Defendant Chokel served as Conseco's Executive Vice President and Chief Financial Officer and/or otherwise acted as a fiduciary with respect to the Plan.

13.     John Does 1-30 were the individual members of the committee which administered the Plan. The identity of the members of the committee which was responsible for carrying out the provisions of the Plan is currently not known.

## CLASS ACTION ALLEGATIONS

14.     Plaintiff brings this action on his own behalf and as a class action pursuant to Rules 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class consisting of (a) all current and former Participants in the Plan for whose individual accounts the Plan held shares of Conseco common stock at any time from April 28, 1999 to the present, and (b) the Plan. Excluded from the Class are Defendants herein, officers and directors of Conseco, members of their immediate families, and the heirs, successors or assigns of any of the foregoing.

15.     The members of the Class are so numerous that joinder of all members is

5

impracticable.  While the exact number of Class members is unknown to Plaintiff at this time

and can only be ascertained through appropriate discovery, Plaintiff believes that there are, at a

minimum, thousands of members of the Class in that Conseco's Form 10-K Annual Report for

the fiscal year ended December 31, 2000 represents that Conseco and its subsidiaries employed

approximately 14,300 employees as of December 31, 2000.

16.     Common questions of law and fact exist as to all members of the Class which

predominate over any questions affecting solely individual members of the Class.  Among the

questions of law and fact common to the Class are:

       a.     Whether Defendants were fiduciaries;

       b.     Whether Defendants breached their fiduciary duties;

       c.     Whether the Plan and the Participants were injured by such breaches; and

       d.     Whether the Class is entitled to damages and injunctive relief.

17.     Plaintiff's claims are typical of the claims of the other members of the Class as the

Plaintiff and all members of the Class sustained injury arising out of Defendants' wrongful

conduct in breaching their fiduciary duties and violating ERISA as complained of herein.

18.     Plaintiff will fairly and adequately represent and protect the interests of the Class.

Plaintiff has retained able counsel with extensive experience in class action litigation.  The

interests of Plaintiff are coincident with and not antagonistic to the interests of the other class

members.

19.     Prosecution of separate actions by members of the class would create a risk of

inconsistent adjudications with respect to individual members of the class which would establish

incompatible standards of conduct for Defendants, or adjudications with respect to individual

members of the class would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

20.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy since joinder of all members of the Class is impracticable. Furthermore, because the injury suffered by the individual Class members may be relatively small, the expense and burden of individual litigation makes it impracticable for the Class members individually to redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

21.     There are one or more putative or certified class action securities cases pending against Conseco and other defendants.  The claims herein are under ERISA and related principles of federal common law and are not being asserted by the plaintiffs in those other class actions. The named plaintiffs in those class actions do not adequately represent the Plaintiff or the Class herein with respect to ERISA claims and may be subject to defenses and limitations of liability under the PSLRA and other statutes and Rules that do not apply to the claims asserted herein.

22.     Under and required by ERISA, defendants carry insurance for claims asserted herein that may not be available to the defendants in the securities class actions.

23.     The Class contains persons who made purchases of Conseco common stock within the time frame implicated in the securities class actions, as well as persons who made no such purchases within the class period for the securities actions, and persons who purchased both within and outside the securities class action time frame.

24.     There are people in this Class who are not members of the classes or putative

7

classes in the securities class action cases.

25.     There are defendants in this case who are not defendants in the securities class

actions.

## DESCRIPTION OF THE PLAN

26.     At all times relevant to this Complaint the Plan was an employee benefit Plan

within the meaning of ERISA §§ 3(3) and 3(2)(A), 29 U.S.C. §§ 1002(3) and 1002(2)(A).

27.     At all times relevant to this Complaint the Plan was "defined contribution" or

"individual account" Plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34), in that

the Plan provided for individual accounts for each Participant and for benefits based solely upon

the amount contributed to the Participant's account, and any income, expenses, gains and losses,

and any forfeitures of accounts of other Participants which could be allocated to such

Participant's accounts.

28.     At all times relevant to this Complaint the Plan provided a number of different

options for investment of the Plan's assets, including Conseco common stock through the

Conseco Stock Portfolio.

29.     At all times relevant to this Complaint Participants directed the Plan to purchase

investments from among the investment options available under the Plan and allocated them to

their individual accounts.

30.     The Form 11-K Annual Report filed with the Securities and Exchange

Commission ("SEC") by the Plan on or about December 31, 2000 states, among other things:

　　　　　a.     that CSL was the Sponsor of the Plan;

　　　　　b.     that the Plan is subject to the provisions of the Employee Retirement

8

Income Security Act of 1974 ("ERISA");

      c.     that the Plan provides a number of investment options for voluntary employee contributions;

      d.     that one of the investment options available to Conseco employees was the "Conseco Stock Portfolio";

      e.     that the "Conseco Stock Portfolio only invests in the common stock of Conseco except for cash which remains in the fund to meet the fund's liquidity needs";

      f.     that employer contributions made by the Company "are invested solely in the common stock of Conseco";

      g.     that the "Plan is administered by CSL who establishes the rules and procedures necessary for the Plan's operations"; and

      h.     that:

> During 2000, assets with a fair value of $53,427,232 were transferred to the Plan. Such assets primarily consist of the assets of the 401(k) plans of certain subsidiaries previously acquired by Conseco, Inc. During 2000, these plans were merged with the Plan.

31.     The Form 11-K Annual Report filed with the SEC by the Plan on or about December 31, 2000 also represents that approximately 38% of the assets of the Plan were then invested in Conseco common stock. If Defendants had made full disclosure to the Participants of Conseco's true financial condition, and the many material problems affecting the Company's operations and liquidity, the Participants would not have chosen Conseco common stock as an investment option under the Plan to the extent that it would result in 38% of the Plan's assets being invested in Conseco common stock. Indeed, had the truth been disclosed to the

Participants Conseco common stock would not have been chosen by many of the Participants as an investment option at all. Further, if Defendants had made full disclosure to the Participants of Conseco's true financial condition, and the many material problems affecting the Company's operations and liquidity, the Participants would have moved out of Conseco common stock and into other, safer and more reliable investment options under the Plan.

## ADMINISTRATION OF THE PLAN

32.    Defendants, as fiduciaries of the Plan, were required by ERISA to furnish certain information to Participants. For example, ERISA § 101, 29 U.S.C. § 1021, requires the Plan's Administrator to furnish a summary plan description to participants. ERISA § 102, 29 U.S.C. § 1022, provides that a summary plan description must apprise Participants of their rights and obligations under the Plan. The Plan's Administrator had the duty and responsibility to distribute to Plan participants information explaining the Plan.

33.    At all times relevant to this Complaint Defendants had the discretion to establish and change the investment alternatives among which Plan participants could direct the investment of the Plan's assets allocated to their accounts.

34.    At all times relevant to this Complaint Defendants had a duty to review the Plan's investment policies and the selection and the performance of investment alternatives offered under the Plan. There was no requirement that any Plan assets be invested in Company stock or that Company stock be continued as an investment alternative.

35.    At all times relevant to this Complaint Defendants had a duty to obtain from the Company information necessary for the proper administration of the Plan.

36.    At all times relevant to this Complaint, Defendants were fiduciaries of the Plan as

defined by ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because they exercised discretionary authority or control respecting management of the Plan or exercised discretionary authority or control respecting management or disposition of assets and had discretionary authority or responsibility in the administration of the Plan.

37.    Each Defendant is liable for the breaches of fiduciary duty of the other Defendants under ERISA § 405, 29 U.S.C. § 1105.

## BREACHES OF FIDUCIARY DUTY

38.    As required by ERISA, Defendants issued one or more Summary Plan Descriptions, each of which expressly incorporated by reference all of the documents filed by Conseco with the SEC under the Federal Securities Laws. These filings, however, contained numerous material misrepresentations, and omitted to state material facts which were necessary to make the statements which were made not misleading, concerning Conseco's financial condition.

39.    In particular, Conseco's SEC filings were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, including, inter alia:

a.    that Conseco's reported financial results for the first three quarters of the 1999 fiscal year, and for the fourth fiscal quarter and the 1999 fiscal year as a whole, were materially overstated because Conseco improperly reported the value of interest-only securities held by Conseco;

b.    that, unbeknownst to investors, Conseco's 1998 acquisition of Green Tree was a disaster for Conseco. Conseco vastly overpaid for Green Tree, which was suffering from a

host of problems and whose portfolio of assets was being carried at artificially inflated values;

        c.     that the Company's reported financial results were artificially inflated through the improper use of "gain-on-sale" accounting;

        d.     that Green Tree was experiencing increasing repayments and charge-offs which were in excess of the assumptions that the Company employed in connection with its use of "gain-on-sale" accounting" and therefore the Company's reported revenues, earnings and income were overstated;

        e.     that the Company's increasing financial results were not representative of improving sales and operations at the Company but rather were attributable to accounting manipulations; and

        f.     that the Company's estimates, projections and opinions as to its expected revenues, earnings, income and value of its stock were lacking in reasonable basis at all relevant times.

        40.     On March 31, 2000, Conseco shocked the market by announcing that it planned to sell Green Tree in order to purportedly "focus on core insurance and investment operations," and that the Company would be taking a staggering $350 million non-cash charge in fiscal year 1999 in order to write-down Green tree's portfolio of interest-only securities. The press release further stated:

> Conseco also announced that it is continuing to review the value of its interest-only securities at Conseco Finance [Green Tree] and expects to record a non-cash charge, estimated at approximately $350 million (after taxes), to write down the carrying value of those securities. The actual amount, which will reduce previously announced earnings for 1999, will be determined prior to the conclusion of the 1999 audit. The company is filing with the U.S.

Securities and Exchange Commission to extend the required date
of its 1999 Form 10-K to April 14, 2000.

41.    Following this shocking announcement, Conseco held a press conference with

analysts, large investors and institutional shareholders, to discuss the Company's announcement.

During the conference call, defendant Hilbert stated that some potential buyers had already

expressed interest in acquiring Green Tree, and that Defendants had already engaged Lehman

Brothers to assist in brokering the sale of Green Tree.  In that press conference, Defendant

Hilbert further acknowledged that the charge against 1999 earnings relating to the overstatement

of Green Tree's earnings could cut Conseco's profits for that year by approximately 33%.

Defendant Hilbert stated further that the sale of Green Tree might produce $4 billion to $4.5

billion.  Even at that figure, Conseco will suffer a loss of more than $2 billion.

42.    In response to these announcements, the price of Conseco stock declined to $8.50

per share - a 75% decline from a Class Period high of $37 9/16 per share reached on March 16,

1999.

43.    On April 5, 2000, Conseco issued another press announcement reversing itself

and stating that Conseco would attempt to file an audited 10-K for fiscal year 1999 by the April

14, 2000 deadline:

> We are nearing completion of our audited Form 10-K for 1999, and
> expect to have it on file by April 14, 2000.  We continue to believe,
> as stated last week, that the net income we previously announced
> for 1999 of $962.2 million will be reduced by approximately $350
> million (after tax) as a result of the adjustment of the value of the
> interest-only securities.

44.    Analysts expressed their disbelief that Conseco management had not been more

forthcoming about the true state of affairs of the Company.  For example, Credit Suisse First

Boston analyst Caitlin Long stated in a report that "Conseco was less than forthcoming to the Street about certain items" in its financial reports and that "[w]e can't stay with this stock any longer." Long further stated that Conseco management claimed that they first discovered the loss after deciding to sell the loan unit but that "[w]e do not believe management's story."

45.    Conseco's deception of the market for its securities for the period from April 28, 1999 through and including April 14, 2000 has now resulted in Conseco agreeing to pay one hundred twenty million dollars to settle a securities class action case on behalf of persons who purchased publicly traded securities of Conseco between April 28, 1999 and April 14, 2000. This settlement fund, however, is only available to persons who purchased Conseco publicly traded securities on the open market, and is not available to persons who merely held Conseco common stock in their 401(k) or other retirement accounts, which includes members of the Class herein.

46.    Conseco, moreover, continued to deceive the Participants after April 14, 2000. Commencing no later than October 30, 2001, Conseco has continuously deceived the Participants with respect to Conseco's true financial condition and results of operations in material respects. Conseco has, among other things, failed to adequately or timely disclose to the Participants the following material facts which were in effect continuously on and after October 30, 2001:

a.    The fact that the Company was facing an imminent liquidity crisis based in large measure on the Company's business in financing manufactured homes;

b.    The fact that Conseco was experiencing material difficulties in collecting on its mobile home loans;

c.    The fact that Conseco was not likely to be able to make bond interest

payments to its lenders;

      d.     The fact that there was a material risk that Conseco common stock would be delisted from the New York Stock Exchange:

      e.     The fact that Conseco did not have sufficient liquidity to satisfy its debt obligations for the 2002 fiscal year; and

      f.     The fact that Conseco was not a going concern.

47.     In addition to concealing from the Participants the Company's material problems, identified above, and its true financial condition, Conseco also affirmatively misled the Participants with respect to Conseco's status as a going concern and concerning Conseco's future prospects. Among other things, on November 15, 2001 Conseco attempted to reassure the Participants that Conseco was a sound investment when, in truth, Conseco did not have the means to satisfy its debt obligations and was experiencing material problems in its Conseco Finance Unit which was responsible for making loans for the purchase of manufactured homes. Similarly, on January 7, 2002, on February 21, 2002, on March 6, 2002 and again on April 1, 2002, Conseco affirmatively misled the Participants with respect to the soundness of choosing Conseco common stock as an investment option under the Plan and deceived the Participants with respect to the Company's true financial condition.

48.     It was not until at least August 14, 2002 when Conseco announced that it was being investigated by the Securities and Exchange Commission about its accounting practices, and that it would be forced to file a Chapter 11 petition if negotiations with its creditors were unsuccessful, that the Participants were provided with even partial meaningful disclosure concerning how risky the choice of Conseco stock as an investment option under the Plan truly

was.  It does not appear even as of the date of the Complaint that Conseco has made full

disclosure to the Participants of the full extent of the Company's financial, operating and

liquidity problems.

### MISMANAGEMENT OF PLAN ASSETS

49.    Pursuant to ERISA § 404(a), 29 U.S.C. § 1104(a), at all times relevant to this

Complaint Defendants had a duty to discharge their duties with respect to the Plan with the care,

skill, prudence and diligence under the circumstances then prevailing that a prudent man acting

in like capacity and familiar with such matters would use in the conduct of an enterprise of a like

character and of like aims, and to diversify investments in the Plan so as to minimize the risk of

large losses, unless under the circumstances it is clearly prudent not to do so.

50.    Defendants are not entitled to the protections of ERISA § 404(c), 29 U.S.C.

§ 1104(c), because the Participants did not exercise independent control over their accounts

because Defendants subjected them to improper influence with respect to the Plan's investments

in Conseco common stock and Defendants concealed material non-public information

concerning Conseco that they were not precluded from disclosing under applicable law.

51.    Defendants breached their fiduciary duties in that they knew or should have

known the facts alleged above and knew or should have known that the Plan should not have

invested in Conseco common stock during the Class Period.

### FIRST CLAIM: INVESTMENT IN CONSECO COMMON STOCK

52.    Plaintiff realleges and incorporate herein by reference the allegations set forth

above.

53.    Pursuant to ERISA § 409(a), 29 U.S.C. § 110(a), any fiduciary who breaches any

of the responsibilities, obligations or duties imposed by ERISA § 404 shall be personally liable to make good to the Plan any losses to the Plan resulting from each breach and shall be subject to such other equitable and remedial relief as the court may deem appropriate.

54.     Pursuant to ERISA § 404, Defendants had a duty to discharge their duties with respect to the Plan solely in the interests of Participants and Beneficiaries and for the exclusive purpose of providing benefits to Participants and their Beneficiaries. Defendants' selection, monitoring, and continuation of the investment alternatives under the Plan were subject to the above-described fiduciary duties. By their continuing to offer Conseco common stock as an investment under the Plan, when Conseco's true financial condition was being concealed, Defendants breached each of these fiduciary duties.

55.     As a consequence of Defendants' breaches, the Plan suffered losses.

56.     Defendants are personally liable to make good to the Plan any losses to the Plan resulting from each breach.

57.     Pursuant to ERISA § 502(a)(3), 11 U.S.C. § 1132(a)(3) the Court should also award equitable relief in the form of restitution.

**SECOND CLAIM: MISREPRESENTATION AND NONDISCLOSURE**

58.     Plaintiff realleges and incorporate herein by reference the allegations set forth above.

59.     Pursuant to ERISA § 409(a), 29 U.S.C. § 110(a), any fiduciary who breaches any of the responsibilities, obligations or duties imposed by ERISA § 404 shall be personally liable to make good to the Plan any losses to the Plan resulting from each breach and shall be subject to such other equitable and remedial relief as the court may deem appropriate.

17

60.    Pursuant to ERISA § 404, Defendants had a duty to discharge their duties with respect to the Plan solely in the interests of Participants and Beneficiaries and for the exclusive purpose of providing benefits to Participants and their Beneficiaries.

61.    Defendants breached these fiduciaries in that they made material misrepresentations and nondisclosures as alleged above.

62.    The Plan, and the Participants acting on behalf of the Plan, relied upon, and are presumed to have relied upon, Defendants' representations and nondisclosures to their detriment.

63.    As a consequence of Defendants' misrepresentations and nondisclosures, the Plan suffered losses.

64.    Defendants are personally liable to make good to the Plan any losses to the Plan resulting from each breach.

65.    Pursuant to ERISA § 502(a)(3), 11 U.S.C. § 1132(a)(3), the Court should also award equitable relief in the form of restitution.

### THIRD CLAIM: DIVIDED LOYALTY

66.    Plaintiff realleges and incorporate herein by reference the allegations set forth above.

67.    Pursuant to ERISA § 409(a), 29 U.S.C. § 110(a), any fiduciary who breaches any of the responsibilities, obligations or duties imposed by ERISA § 404 shall be personally liable to make good to the Plan any losses to the Plan resulting from each breach and shall be subject to such other equitable and remedial relief as the court may deem appropriate.

68.    Pursuant to ERISA § 404, Defendants had a duty to discharge their duties with respect to the Plan solely in the interests of Participants and beneficiaries and for the exclusive

18

purpose of providing benefits to Participants and their Beneficiaries.

69.     As alleged above, Defendants engaged in a scheme and course of conduct to artificially inflate the price of Conseco common stock, thereby protecting Defendants Hilbert and Dick, and other Conseco executives, who would have become liable on certain personal loans that they had taken out to purchase Conseco common stock.

70.     Defendants breached their fiduciary obligations when they acted in their own interests rather than solely in the interests of the Participants and Beneficiaries.

71.     As a consequence of these breaches, the Plan suffered losses.

72.     Defendants are personally liable to make good to the Plan any losses to the Plan resulting from each breach.

73.     Pursuant to ERISA § 502(a)(3), 11 U.S.C. § 1132(a)(3), the Court should also award equitable relief in the form of restitution.

## FOURTH CLAIM: MISMANAGEMENT OF PLAN ASSETS

74.     Plaintiff realleges and incorporate herein by reference the allegations set forth above.

75.     Pursuant to ERISA § 409(a), 29 U.S.C. § 110(a), any fiduciary who breaches any of the responsibilities, obligations or duties imposed by ERISA § 404 shall be personally liable to make good to the Plan any losses to the Plan resulting from each breach and shall be subject to such other equitable and remedial relief as the court may deem appropriate.

76.     Pursuant to ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), the Defendants were required to discharge their duties with respect to the Plan solely in the interests of the Participants and Beneficiaries with the care, skill, prudence, and diligence under the circumstances then

19

prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct so enterprise of a like character and like aims and to diversify investments in the Plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so.

77.    Defendants breached these duties in that the Plan invested in Conseco common stock when the price of Conseco common stock was artificially inflated, and the Plan overallocated assets into Conseco common stock, thereby failing to diversify assets so as to minimize the risk of large losses.

78.    As a consequence of these breaches, the Plan suffered losses.

79.    Defendants are personally liable to make good to the Plan any losses to the Plan resulting from each breach.

80.    Pursuant to ERISA § 502(a)(3), 11 U.S.C. § 1132(a)(3), the Court should also award equitable relief in the form of restitution.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for:

A.    Actual damages in the amount of any losses the Plan suffered, with such losses to be allocated among the Participants' individual accounts in proportion to the accounts' losses;

B.    Equitable relief in the form of restitution;

C.    Costs pursuant to 29 U.S.C. § 1132(g);

D.    Attorneys' fees pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

E.      Such other relief as the Court may deem equitable and just.

Dated: October **24**, 2002

PRICE, JACKSON, WAICUKAUSKI & MELLOWITZ, P.C.

By: _Audrey M. Bougard_

Henry J. Price, Attorney No. 5822-49
Audrey M. Bougard, Attorney No. 20805-49
301 Massachusetts Avenue
Indianapolis, Indiana 46204
Telephone: (317) 633-8787
Fax: (317) 633-8797

**OF COUNSEL**
STULL, STULL & BRODY
Edwin J. Mills
6 East 45th Street
New York, New York 10017
Telephone: (212) 687-7230
Fax: (212) 490-2022

WEISS & YOURMAN
Joseph H. Weiss
551 Fifth Avenue, Suite 1600
New York, New York 10176
Telephone: (212) 682-3025
Fax: (212) 682-3010

KELLER ROHRBACK L.L.P.
Lynn Lincoln Sarko
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
Telephone: (206) 623-1900
Fax: (206) 623-3384

*Attorneys for Plaintiff*