**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

```
_____X
RODERICK W. RUSSELL, ON BEHALF OF      :    Case No. 1:02-CV-1639-LJM-WTL
HIMSELF AND A CLASS OF PERSONS         :
SIMILARLY SITUATED, AND ON BEHALF OF   :
THE CONSECOSAVE PLAN,                  :
                                       :
        PLAINTIFF,                     :
                                       :
VS.                                    :
                                       :
CONSECO SERVICES, LLC, ROLLIN M. DICK, :
GARY C. WENDT, STEPHEN C. HILBERT,     :
WILLIAM J. SHEA, CHARLES B. CHOKEL,    :
JOHN J. SABL, THOMAS J. KILIAN, RICHARD:
H. KREMER, EDWARD M. BERUBE,           :
ELIZABETH C. GEORGAKOPOULOS, DAVID     :
K. HERZOG, AND JOHN DOES 1-30,         :
                                       :
        DEFENDANTS.                    :
_____X
```

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR FINAL APPROVAL OF**
**CLASS ACTION SETTLEMENT**

**Introduction**

This is a proposed ERISA class action case. In July 2004 this Court dismissed the action,

holding that the final judgment which approved an earlier securities fraud class action settlement

involving Conseco, Inc. ("Conseco")[1] discharged all defendants in this case from all claims and

liabilities asserted herein.

Plaintiff thereupon appealed the dismissal of the action. While on appeal the parties, with

the assistance of the Settlement Conference Office of the Seventh Circuit pursuant to Circuit

_____

[1] Conseco was originally a defendant in this action. During the pendency of this action
Conseco filed a case under Chapter 11 of the Bankruptcy Code and received a discharge from the
claims asserted in this case as a result of the Bankruptcy Court's approval of its plan of
reorganization. Conseco has been dismissed as a defendant.

Rule 33, reached an agreement in principle to settle this action for nine million nine hundred seventy-five thousand dollars ($9,975,000). On August 16, 2005 this Court granted preliminary approval of the proposed class action settlement and Plaintiff has now moved that the Court give final judicial approval to the proposed settlement under Fed. R. Civ. P. 23(e).

### Nature and History of the Litigation

This action was commenced on October 24, 2002 with the filing of Plaintiff's Complaint for Breach of Fiduciary Duty and Violation of ERISA Disclosure Requirements. Thereafter, on or about March 22, 2004, an amended pleading was filed which was the operative pleading in this case. As explained further below, the extended period between the filing of the original and amended pleadings was a consequence of Conseco's December 2002 bankruptcy filing and a resultant stay of litigation directed by the bankruptcy court.

The Amended ERISA Complaint alleged, in substance, that for a period of several years, commencing on April 28, 1999, Conseco and other fiduciaries of the Conseco Savings Plan, Conseco's 401(k) defined contribution retirement plan (the "Plan"), breached their fiduciary duties by continuing to allow investment of Plan assets in employer (that is, Conseco) common stock when Conseco common stock was not a prudent investment for retirement accounts, and by failing to provide sufficient and timely information so that the participants of the Plan could make informed judgments regarding their retirement investment options. More particularly, the Amended ERISA Complaint focused on a series of post-April 14, 2000 improprieties by Conseco and others relating to a program of officer and director loans for the purpose of purchasing Conseco stock that cost Conseco more than half a billion dollars, undisclosed guarantee liabilities by Conseco with respect to certain subordinated debt securities known as "B-2 Certificates," a further loss contingency of approximately $2 billion related to the sale of

securities backed by loans and notes originated by the Conseco Finance subsidiary, and Conseco's liquidity problems relating to its servicing of $25 billion in manufactured housing receivables (Amended ERISA Complaint ¶ 68(f)-(l)).  Among other things, the Complaint alleges that "Defendants knew or should have known of the Company's financial distress, that Conseco Finance had fundamental operational and cash flow problems and that Conseco was not a viable 'going concern' without an extension on its half billion dollars in D&O loan guarantees maturing in December 2003. . . ."  Amended ERISA Complaint ¶ 68(l).  The Complaint further alleged:

> When it became clear that the banks were not going to grant an extension on the D&O loan guarantees, the senior executives of Conseco decided to bankrupt the Company and preserve its insurance company assets, despite previous assurances from Defendant Wendt that Conseco was willing and able to meet its liquidity needs in 2002 and beyond. In the ensuing bankruptcy proceeding, the Company's web of deceit fell away to reveal the true operating condition of what was formerly Conseco and Conseco Finance.

> Instead of providing complete and accurate information to Plan Participants concerning the riskiness of investing in Conseco stock, Defendant Wendt issued at least twenty four (24) "turnaround" memos providing personal assurances to employees that management was building shareholder value, that the businesses were performing well despite the slowdown in the economy and that the debt situation was well in hand.

> On August 9, 2002, a Conseco press release shocked employees by revealing Conseco was exercising a 30-day grace period on an upcoming bond interest payment and hiring financial and legal advisors to engage in discussions with its debt holders on the restructuring of Conseco's capital structure. In this same August 9, 2002, press release, Defendant Wendt, however, continued to praise the business, stating "[w]e cannot emphasize strongly enough our continued belief that the Insurance and Finance businesses that comprise Conseco are profitable businesses...."  Only four months before the August 9, 2002 press release, Defendant Wendt had offered Plan participants this hopeful, but misleading, note: "The 2002 liquidity issues are behind us…. The 2002 shortfall is covered, and we are confident about liquidity in 2003."

On August 12, 2002, three days after Conseco's press release, the New York Stock Exchange ("NYSE") halted trading on Conseco common stock and securities.

> Conseco recently emerged from bankruptcy as an insurance-only company. The former shares of Conseco's common stock were canceled and Conseco's noteholders received a portion of their indebtedness. Plaintiff and the members of the Class in this case received nothing out of Conseco's bankruptcy case.
>
> On or about March 11, 2004 Conseco announced that it had consented to the entry of a cease and desist order relating to the SEC investigation into the manner in which Conseco Finance had accounted for interest-only securities and servicing rights.
>
> On or about March 11, 2004 the SEC also filed a civil complaint against Defendants Dick and Adams, charging that these Defendants conducted a fraudulent accounting scheme which had led to hundreds of millions of dollars of inflated corporate earnings.

Amended ERISA Complaint ¶¶ 68-74.

While focused on alleged breaches of fiduciary duty after April 14, 2000 (a significant date in this case, as discussed hereafter), the Amended ERISA Complaint also alleged violations of the duty of prudence and of the duty of disclosure relating to Conseco's 1998 acquisition of Green Tree Financial Corporation (which was renamed Conseco Finance after the acquisition) and alleged reporting and accounting improprieties attendant to the acquisition of Green Tree and Green Tree's operations. *See, e.g.,* Amended ERISA Complaint ¶ 68(a) and (b) (alleging the failure to disclose "that Conseco's reported financial results for portions of the Class Period, including the 1999 fiscal year and the quarter thereof, were materially overstated").

Shortly after this case was commenced, Conseco and certain related entities filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois. Conseco then sought and obtained stay relief of litigation against it and other debtors on the grounds that continued litigations may or would distract management from the ongoing bankruptcy reorganization efforts and might affect assets of the debtors' estates, including possibly insurance proceeds applicable to the claims asserted here. In effect, from the time of Conseco's bankruptcy filing in December of 2002 until Conseco

emerged from bankruptcy with a confirmed plan of reorganization in September of 2003, this action was effectively stayed in this Court, but litigation efforts relating to this case went forward in the Chicago bankruptcy court.

The litigation efforts which were undertaken by Plaintiff's Counsel in this case in the Conseco bankruptcy case were significant. Plaintiff's Counsel's efforts were significant because Conseco sought in the bankruptcy case to discharge all of the claims asserted in this case, even against non-debtor affiliates of Conseco, without payment of any consideration. Specifically, Conseco's Second Amended Disclosure Statement for Reorganizing Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code (the "Disclosure Statement") stated with respect to this action:

> In October 2002, Roderick Russell, on behalf of himself and a class of persons similarly situated, and on behalf of the ConsecoSave Plan, filed an action in the United States District Court for the Southern District of Indiana against CNC, Conseco Services and certain current and former officers of CNC (Roderick Russell, et al. v. Conseco, Inc., et al., Case No. I:02-CV-1639 LJM). The purported class action consists of all individuals whose 401(k) accounts held common stock of CNC at any time from April 28, 1999 through the present. The ultimate outcome of this lawsuit cannot be predicted with certainty. These claims are classified as 14A and 11B Securities Claims under the Plan. CNC believes that this lawsuit is meritless. Additionally, CNC has filed an adversary proceeding to extend the automatic stay provided for by the Bankruptcy Code to this litigation as it pertains to current and former officers and directors of CNC.

Disclosure Statement Article VI.G.1 (at page 71) (emphasis added).

Upon learning that Conseco planned to classify the claims in this case as 14A and 11B Securities Claims under the Plan Plaintiff herein, through Plaintiff's Counsel in this case, immediately objected. Plaintiff objected because, under the proposed Plan, Securities Claims (Classes 11B and 14A) "receive no distribution under the Plan with respect to such Claims." Plan Article III.A.14 and Article III.C.11. Accordingly, Plaintiff, on or about May 14, 2003, filed a paper entitled "ERISA Class Plaintiff's Limited Objection to Disclosure Statement" in

Conseco's bankruptcy case, arguing that classifying the ERISA claims the same as the securities fraud claims would be unlawful. In the Limited Objection to Disclosure Statement, Plaintiff herein contended, among other things, that:

> 1.    "The ERISA claims are general unsecured claims and should share equally with the other general unsecured claims in Class 8A. ERISA claims are not subject to Section 510(b). See In re Drexel Burnham Lambert Group, Inc., 138 B.R. 717, 720-21 (Bankr. S.D.N.Y. 1992). In Drexel, as here, the ERISA claims included a claim "that the Debtors and plan fiduciaries should have known about the illegal activity, realized that it threatened the value of equity interests in [the Debtor], and acted to protect the employees who held shares under the [Drexel] benefit plans." Id. The court in Drexel specifically noted that the ERISA claims against the nondebtor fiduciaries, if reduced to judgment, would give rise to claims by such fiduciaries against the debtor, which would not be subject to subordination under Section 510(b). Id."; and

> 2.    "Under Sections 1122(a) 1129(b), the Plan, to be confirmable, must treat claims in the same class alike, and claims entitled to different priorities cannot be classified together. A plan that violates these principles discriminates unfairly against a class and therefore cannot be confirmed. See, e.g., Core States Bank, N.A. v. United Chem. Techs. Inc., 202 B.R. 33, 47 (E.D. Pa. 1996). The debtors, moreover, bear the burden of proving that the classification of claims is proper under Sections 1122(a) and 1129(b). See, e.g., In re Eddington Thread Mfg. Co., 181 B.R. 826, 833 (Bankr. E.D. Pa. 1995); In re 222 Liberty Associates, 108 B.R. 971, 991 (Bankr. E.D. Pa. 1990)."

Plaintiff thereupon referred the bankruptcy court to important precedent for the proposition that Conseco's plan to discharge the ERISA claims in this case against any person or entity other than a named debtor would be unlawful and could not be confirmed. In that connection, Plaintiff referred the bankruptcy court to such authorities as *In re Dow Corning Corporation*, 280 F.3d 648, 658 (6th Cir. 2002); *In re Continental Airlines*, 203 F.3d 203, 212 (3d Cir. 2000) (bankruptcy court may not discharge the liabilities of a non-debtor even pursuant to a reorganization plan without reasonable compensation to those persons whose suits would be enjoined as part of the plan); *Matter of Zale Corp.*, 62 F.3d 746, 760 (5th Cir. 1995) ("Section 524 prohibits the discharge of debts of nondebtors. Accordingly, we must overturn a §105

injunction if it effectively discharges a nondebtor."); *In re Specialty Equip. Cos.*, 3 F.3d 1043, 1047 (7th Cir. 1993) (bankruptcy court may release a non-debtor from liability only with the consent of the affected creditor); *In re Greater Bay Hotel & Casino, Inc.*, 2000 Bankr. LEXIS 837, n. 9 (Bankr. D.N.J. 2000) (summarizing case law under 11 U.S.C. §524(e), including the *Continental* and *Specialty Equip.* cases discussed herein).

In addition to objecting to the Disclosure Statement, Plaintiff herein also objected to the corresponding "Release of Non-Debtor" provisions in Conseco's Second Amended Joint Plan of Reorganization. Plaintiff's written objection to the Second Amended Joint Plan (in particular, to the release of non-debtors provisions in Articles III.A.1, III.A.2, III.B.14 and III.C.11 of the Plan), were filed with the bankruptcy court in late May 2003. Thereafter, discussions ensued with debtors' counsel on the subject of the propriety of releasing non-debtors (in particular, fiduciaries of the Plan in this case) from the claims and liabilities in this case without sharing in the distributions out of the bankruptcy case. Ultimately, Conseco's Plan was amended to make clear that only the debtors would be discharged as a result of the confirmed plan of reorganization, and that the claims in this case could proceed against non-debtor affiliates of the debtors, such as individual Plan fiduciaries.[2]

The end result of the bankruptcy proceedings was that Conseco itself received a discharge from the claims asserted in this case, and was dismissed as a defendant, but the case was allowed to proceed against the individual fiduciaries of the Plan. As noted above, the claims against the

---

[2]Plaintiff and Plaintiff's Counsel herein believe that their written objections in the bankruptcy case and negotiations with debtors' counsel contributed to the plan amendment whereby non-debtor affiliates of Conseco would not be discharged from liability. Plaintiff and Plaintiff's Counsel acknowledge, as they must, that other parties in the bankruptcy case also objected to the "Release of Non-Debtors" provisions of the proposed Second Amended Joint Plan, and that such other parties' written objections and possible negotiations with debtors' counsel may have contributed to this result.

fiduciaries of the Plan other than Conseco were then stated in the Amended ERISA Complaint filed in March 2004.

Defendants' response to the Amended ERISA Complaint was a motion to dismiss or, in the alternative, for summary judgment. Defendants' motion was predicated largely on the proposition that a prior securities fraud class action settlement in this District operated to release and discharge all Defendants in this case from all claims asserted in the Amended ERISA Complaint. The prior securities fraud case was *In re Conseco, Inc. Securities Litigation*, No. 1P00-C-00585-Y/S (the "Securities Action"). The Securities Action was resolved by a Stipulation of Settlement executed on May 21, 2002 and approved by an Order and Final Judgment entered thereafter by Judge Young of this Court.

In moving to dismiss or for summary judgment in this case based on the prior settlement of the Securities Action, Defendants here focused on the release language in the May 21, 2002 Stipulation of Settlement. That release language was set forth in Article I (64) of the Stipulation of Settlement and stated:

> "Released Claims" means any and all manner of actions, causes of actions, suits, obligations, claims, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses, and attorneys' fees whatsoever, whether in law or in equity and whether based on any federal law, state law, common law or foreign law right of action or of any other type or form, foreseen or unforeseen, actual or potential, matured or unmatured, known or unknown, accrued or not accrued which each Lead Plaintiff and *Class Member*, or any of them, ever had, now have, or can have, or shall may hereafter have, either individually, or as a member of a class, against any and all Released Persons, for, based on, by reason of, or arising from or relating to the conduct alleged in the Consolidated Class Actions or the Action, including, but not limited to (i) claims which arise out of any of the facts, transactions, events, occurrences, acts or omissions mentioned or referred to in the Complaint or other matters that are or could have been set forth, alleged, embraced or otherwise referred to in the Action or the Consolidated Class Actions or which could have been brought against Defendants relating to a Class Member's purchase or acquisition of Class Securities during the Class Period or sale during the Class Period of publicly-traded put options on Conseco common stock; (ii) claims arising out of the prosecution or defense of the Action,

> including, but not limited to, claims related to the execution of, and entry into, this Stipulation, such as, but not limited to, claims for fraud in the inducement, negligent misrepresentation, or fraud; except that nothing herein releases any claim arising out of the violation or breach of this Stipulation.

(Emphasis added).

The Stipulation of Settlement in the Securities Action thereupon defined "Class" and "Class Member" as follows:

> "Class" means all persons or entities who during the period from April 28, 1999 through and including April 14, 2000, either: (i) purchased or otherwise acquired publicly traded securities of Conseco [and related entities].

Stipulation of Settlement Art. I (3).

"Class Member" is defined as "any person or entity included in the Class, except for any person or entity who has filed a timely and valid Request for Exclusion." Stipulation of Settlement Art. I (4). The Stipulation of Settlement further defined "Class Period" as "the period beginning April 28, 1999 through and including April 14, 2000." Stipulation of Settlement Art. I (5).

These definitions in the Stipulation of Settlement were then incorporated into the final order and judgment approving of the securities class action settlement.

Defendants moved to dismiss based upon the above-referenced provisions of the settlement agreement and order approving settlement agreement in the Securities Action. In their principal Memorandum dated June 1, 2004 Defendants claimed that the securities settlement encompassed the Plan, Plaintiff Russell in this case and the proposed class in this case; that the judgment approving settlement in the Securities Action required dismissal under the doctrine of *res judicata*, and that Plaintiff in this case was seeking an "impermissible double recovery" by prosecuting ERISA claims which (Defendants contended) had already been discharged by the release in the Securities Action.

Defendants also moved to dismiss on grounds unrelated to the settlement and order and final judgment in the Securities Action. Defendants' further arguments for dismissal included that the Amended ERISA Complaint did not adequately allege that the Defendants were fiduciaries of the Plan and that their alleged misconduct occurred in a fiduciary capacity (*citing, inter alia, Pegram v. Herdrich*, 530 U.S. 211, 226 (2000); that the Amended ERISA Complaint sought monetary, rather than equitable relief, and that such monetary relief is not available in a case of this nature (*citing, inter alia, Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002)), and that the allegations that Conseco stock should not have been permitted as an investment option under the Plan constituted a challenge to "plan design," as distinguished from plan administration, and that a court cannot review matters of plan design and structure (*citing, inter alia, Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1292 (10th Cir. 1999)).

Plaintiff opposed the motion to dismiss or for summary judgment. As to the settlement and final judgment in the Securities Action, Plaintiff contended that the judgment in the Securities Action did not release the ERISA claims asserted in this case because the Amended ERISA Complaint in this case alleged breaches of fiduciary duty that were fundamentally different from the claims asserted in the Securities Action and, significantly, also alleged claims which post-dated the events at issue in the Securities Action. For example, the Amended ERISA Complaint focuses in this case is on the conduct of Defendant Gary C. Wendt, Conseco's Chief Executive Officer after April 14, 2000, who told plan participants in 2003 that "the 2002 liquidity issues are behind us. . . . The 2002 shortfall is covered, and we are confident about liquidity in 2003." (Amended ERISA Complaint ¶ 70). Wendt, moreover, allegedly served as Chief Executive Officer and Chairman of the Board of Directors of Conseco while at the same time serving as a member of the Benefits Committee which administered the Conseco Savings Plan.

At the same time that Defendant Wendt was serving as CEO and thereby allegedly became knowledgeable concerning the officer and director loan program, the B-2 Certificates, the loss contingency relating to securities backed by loans and notes originated by the Conseco Finance subsidiary and the problems in Conseco's other lines of business (Amended ERISA Complaint ¶ 68-74), Wendt was also on the committee administering the retirement plan, which chose the investments which would be made available to participants under the plan and communicated with plan participants.  Wendt was not a defendant in the Securities Action.  The claims pleaded in this case against Wendt were thus arguably not addressed in the Securities Action or in the Securities Action settlement.

In arguing against dismissal of this case based on the settlement in the Securities Action, Plaintiff also made the following arguments:

First, the dismissal of the ERISA claims pleaded in the Complaint for the period April 28, 1999 to April 14, 2000 (the time period where this case overlaps with the Securities Action) violated principles relating to standing and due process.  This is so because under ERISA § 409, only participants and beneficiaries of a plan governed by ERISA, or the Secretary of Labor, may prosecute ERISA claims.  Plaintiff here argued in opposing dismissal that the institutional plaintiffs in the Securities Action had no standing to prosecute any ERISA claims.  Second, Plaintiff contended that under ERISA § 406(a) it would have been a "prohibited transaction" for Conseco, and the individual defendants as fiduciaries of the 401(k) plan, to obtain a release of the claims against themselves without the approval of an independent fiduciary.  Third, Plaintiff argued that a settlement of claims which was explicitly limited to the time period April 28, 1999 to April 14, 2000 could not work to release claims which only came into existence after April 14, 2000.  Fourth, Plaintiff asserted the position that the settlement instruments and judgment were

limited, by their terms, to the "purchase or acquisition" of Conseco securities. This was entirely appropriate for the securities settlement since, under federal securities law, a transaction – a purchase, acquisition, sale, option exercise, or other transaction – is an essential element of a claim for securities fraud. This case, however, was brought under ERISA, which has no such transaction requirement. In other words, a participant who acquired units of the Conseco Stock Fund in, say, 1998, and continued to hold those units in a 401(k) account through 2003, was not a Class Member as defined in the Securities Action, but, Plaintiff argued, he did have ERISA claims relating to such holdings.

Plaintiff also opposed Defendants' motion to dismiss to the extent that Defendants presented arguments relating to the propriety of the pleading of the ERISA claims (as distinct from the effect of the Securities Action settlement). With respect to the argument that the Amended ERISA Complaint failed to adequately allege fiduciary misconduct and that Defendants were acting in a fiduciary capacity, Plaintiff pointed out that under ERISA every plan must have at least one "named fiduciary" with overall responsibility for the management and administration of the plan (ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1)), that at least one Defendant in this case (Conseco Services LLC) was such a "named fiduciary" and, further, that the test of being an ERISA fiduciary is a "functional" or "*de facto*" test as set forth in ERISA § 3(21)(A). Plaintiff further contended that the investment and management of the assets of the Plan were not matters of "plan design," but rather inherent fiduciary functions which were subject to ERISA's duties of loyalty and prudence (*citing, inter alia, FirsTier Bank, N.A. v. Zeller*, 16 F.3d 907, 911 (8th Cir. 1994) and *In re Sprint Corp. ERISA Litig.*, No. 03-2002, 2004 WL 1179371, at *12 (D. Kan. May 27, 2004)). Finally, Plaintiff argued that the relief requested in the Amended ERISA Complaint – that the breaching fiduciaries make good to the Plan the

losses suffered by the Plan as a result of the imprudent investment of Plan assets in Conseco stock – does constitute appropriate equitable relief under ERISA. In that connection, Plaintiff cited, among other authorities, an *amicus* brief of the Department of Labor in another matter (Brief of *Amicus Curiae* DOL, at 5-6, *Ostler v. OCE-USA, Inc.*, No. 00-7753, 2001 WL 1191183 (N.D. Ill. Oct. 4, 2001)), and *In re Excel Energy, Inc., Sec., Derivative & ERISA Litig.*, 312 F. Supp. 2d 1165, 1180 (D. Minn. 2004).

On July 30, 2004, this Court entered its ruling on Defendants' motion to dismiss. Without reaching the ERISA-specific arguments relating to the sufficiency of the Amended ERISA Complaint, the Court found that the settlement in the Securities Action and the final judgment entered thereon by Judge Young served to release all of the claims asserted in this case by Plaintiff Russell and members of the proposed ERISA class as against all Defendants. This Court found, among things, that "the Plaintiff in the instant case was included in the settlement language of the 2000 Stipulation of Settlement as an employment benefit plan created for the benefit of the employees of Conseco," that "the 2000 case mentions the members of the plan in the complaint and refers to the plan members in the settlement" and that "[t]he settlement of the 2000 case . . . foreclosed the future claims that the Plaintiff attempts now to put back at issue in this case. Therefore the argument that the Plaintiff makes in attempting to distinguish the instant case from the 2000 case by including a different temporal component is of no moment." Order dated July 30, 2004.

Plaintiff appealed. The parties thereafter engaged in a series of telephonic and face-to-face settlement meetings overseen by the Seventh Circuit Settlement Conference Office pursuant to Circuit Rule 57. With the assistance of Seventh Circuit Staff Counsel Rocco Spagna the parties were able to reach a settlement in principle to settle this action for $9,975,000, with the

net proceeds of the settlement allocated 20% to claims prior to April 14, 2000 (the time period expressly covered by the settlement in the Securities Action), and 80% to be distributed for claims after April 14, 2000 (a time period not expressly covered by the settlement of the Securities Action).  The settlement in the Seventh Circuit, however, did not come about before Plaintiff fully briefed in the Court of Appeals the reasons why Plaintiff believed the dismissal of all claims in the Amended ERISA Complaint (and especially claims for the period after April 14, 2000) should not have been dismissed.

After settlement in principle was reached, Plaintiff, in consultation with the Seventh Circuit Settlement Conference Office, prepared and filed appropriate motion papers under Circuit Rule 57 to arrange for the remand of the action to this Court for further proceedings in contemplation of settlement approval.  These papers consisted of a paper regarding this Court's "indication" of further action under Circuit 57 and a subsequent motion to remand in the Court of Appeals.  In addition, following the agreement in principle reached as part of the Seventh Circuit mediation, Plaintiff and Plaintiff's Counsel herein drafted and executed the appropriate settlement instruments, including class notice.

### Factors Governing Final Judicial Approval of Final Class Action Settlements

The Seventh Circuit has set forth six factors to analyze in determining whether a settlement should be given approval:

1.      the relative strength of the plaintiffs' case on the merits weighed against the value of the settlement achieved;

2.      the presence of collusion in achieving the settlement;

3.      the stage of the proceedings and amount of discovery completed;

4.      the opinion of competent counsel;

5.      the complexity, length, and expense of continued litigation; and

6.      the degree of opposition expressed by those affected by the settlement.

*E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-889 (7th Cir. 1985), *cert. denied*, 478 U.S. 1004 (1986); *General Electric Capital Corporation v. Lease Resolution Corporation*, 128 F.3d 1074, 1082 (7th Cir. 1997).

The Court should give final approval to the proposed class action settlement in this case upon consideration of each of the six factors identified above.

**The Relative Strength of the Plaintiffs' Case on the Merits**
**Weighed Against the Value of the Settlement Achieved**

The $9,975,000 settlement is unquestionably within the realm of what this Court should find to be fair, reasonable and adequate in this case in light of the risks of further litigation and the likely maximum amount of recovery if the case was litigated to its conclusion on the merits. This case was dismissed.  On July 30, 2004, this Court granted defendants' motion which argued that all claims asserted in this case for violations of ERISA had already been released as part of a prior securities fraud class action case in this District involving Conseco (*In re Conseco Securities Litigation*, No. IP00-C-00585-Y/S) and by orders approving that settlement.  In considering the fairness of the proposed settlement it is significant that this Court has already found that the prior securities class action settlement, and the final judgment entered thereon, discharged defendants from *all* liabilities asserted herein, for the period from April 28, 1999 to April 14, 2000 (the time period expressly covered by the prior securities fraud settlement), and also discharged the claims for the period from April 17, 2000 to the present (an additional time period alleged in the operative pleading in this case).  While Plaintiff respectfully disagrees with the order of dismissal, defendants continue to contend that this Court's order of dismissal was correct as to both the time period for claims which overlaps with the securities case and for the

15

later time period.  The first risk of further litigation, then, which should be considered in considering final approval to the $9,975,000 settlement is an obvious one:  further litigation may have resulted in an unsuccessful appeal and no recovery at all to any members of the proposed class in this case.

The second risk of further litigation to be considered would also appear obvious – a partial affirmance.  One possible result on appeal would be a partial affirmance whereby the claims asserted in this case for the time period overlapping with the earlier securities case remain dismissed, but the case is remanded for further proceedings with respect to the claims asserted for the later time period (after April 14, 2000).  In the event of such a partial affirmance the only claims to be litigated herein would be claims alleging that Conseco stock was an imprudent investment after April 14, 2000.  Such a result on appeal, however, would hardly guarantee a recovery for such post-April 14, 2000 claims.  Such claims would only ultimately result in a recovery if such claims survived further motions to dismiss, motions for summary judgment and were successfully proved at trial – hardly a guaranteed result.[3]  The proposed $9,975,000 settlement, if approved by this Court, provides a certain recovery for those who received nothing out of the prior securities class action settlement (claimants after April 14, 2000) and an

---

[3]  Experience teaches that even very large judgments, recovered after lengthy litigation and trial, can be completely lost on appeal or as a result of judgment notwithstanding the verdict. *See, e.g., Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing $81 million jury verdict for plaintiff after 7 years of litigation), *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (multimillion dollar judgment for plaintiffs reversed on appeal after 11 years of litigation); *MCI Communications Corp. v. AT&T*, 708 F.2d 1081 (7th Cir. 1983); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial); *Hughes Tool Co. v. Trans World Airlines, Inc.*, 409 U.S. 363 (1973) (reversing treble damage judgment of $145,000,000 – in action begun in 1961); *Piper v. Chris-Craft Industries, Inc.*, 430 U.S. 1 (1977) (reversing Second Circuit's award of damages under Williams Act in amount of $25,793,365 – after 8 years of litigation).

additional recovery for pre-April 14, 2000 claimants. This result is eminently fair for the ERISA class in light of all the circumstances attendant to this case.

The $9,975,000 settlement is also fair in light of the maximum recovery that would likely be obtained if the case succeeded on the merits. With respect to the period of alleged impropriety commencing on April 17, 2000 (that is, the time period not expressly covered by the prior Securities Action settlement), Plaintiff is submitting herewith the Affidavit of expert witness John C. Hammerslough. The Hammerslough Affidavit demonstrates that the Plan holdings of Conseco common stock after April 17, 2000 were comparatively low, only about 1,500,000 shares. Further, the market price of Conseco common stock during the post-April 17, 2000 time period was also comparatively low, generally less than $10 per share. Accordingly, the opinion expressed in the Hammerslough Affidavit is that the likely maximum recovery for the post-April 17, 2000 time period is approximately $30 million. *See* Hammerslough Affidavit ¶ 7.

With respect to the pre-April 17, 2000 period (that is, the time period which was expressly covered by the prior Securities Action settlement), Plan losses for this time period may well have been substantial. However, this Court has already found that the $120 million which was paid to settle the Securities Action was also, in effect, paid to settle the claims asserted in this case for time periods including April 28, 1999 to April 14, 2000. While Plaintiff thus believes that the ERISA claims for the pre-April 17, 2000 time period should not have been dismissed, Plaintiff acknowledges that this time period's temporal overlap with the settled class in the Securities Action may well have increased the risk of affirmance of the dismissal of claims for the pre-April 17, 2000 time period compared to the post-April 17, 2000 time period. Settlement of this case for $9,975,000, with 20% of the net settlement proceeds to be distributed for claims prior to April 17, 2000, is fair and reasonable in light of all of the risks attendant to

further litigation and other relevant factors, but it is especially fair and reasonable given the partial temporal overlap of this case with the settled Securities Action.

### The Presence or Absence of Collusion in Achieving the Settlement

There was no collusion in reaching the settlement in this case. Plaintiff has submitted the Declaration of Edwin J. Mills, Co-Lead Counsel, attesting to the absence of collusion (*see* Mills Declaration ¶ 3). Further, this case was settled as a result of settlement conferences conducted by the Seventh Circuit Settlement Conference Office under the auspices of Seventh Circuit Staff Counsel Rocco Spagna.

### The Stage of the Proceedings and Amount of Discovery Completed

Settlement was only obtained in this case after the framing of the original pleading and Amended ERISA Complaint; only after Plaintiff and Plaintiff's Counsel received from Defendants, and reviewed, ERISA-specific documentation under ERISA § 104(b)(4); only after a full briefing on the motion to dismiss or for summary judgment in this case, and only after the preparation and filing of Plaintiff's principal brief in the Seventh Circuit. As noted above, there were also very significant proceedings undertaken in the Bankruptcy Court to protect the rights of Plaintiff and class members in this case. There was thus a more than adequate record upon which Plaintiff's Counsel could reach an informed judgment as to the fairness of the proposed $9,975,000 settlement and, correspondingly, a more than ample record upon which this Court can assess the fairness of the proposed settlement.

### The Opinion of Competent Counsel

Co-Lead Counsel in this case are Stull, Stull & Brody of New York City and Keller Rohrback L.L.P. of Seattle. Each of these firms has extensive experience in complex class action litigations, including ERISA cases such as this one. The Stull and Keller firms, just by way of

example, served as co-lead counsel in the Lucent ERISA litigation in New Jersey, which settled

for $69 million about two years ago and which remains one of the larger ERISA class action

settlements.  The Stull firm is presently serving as lead or co-lead counsel in major ERISA cases

involving such companies as Tyco International, AOL Time Warner, Motorola and Sprint, while

the Keller firm has served or is serving as lead counsel in the ERISA class actions involving

Enron, WorldCom, Global Crossing and Merck.  The opinion of Co-Lead Counsel that this is a

fair settlement should be given appropriate consideration by the Court in deciding the present

motion for final approval of settlement.  The support of the settlement by the Price Waicukauski

Riley & DeBrota, LLC firm, a firm known to this Court, and Robert D. Allison & Associates, a

Chicago firm which rendered significant services in connection with Conseco's Chicago

bankruptcy filing, further supports the fairness of the proposed settlement.[4]

### The Complexity, Length, and Expense of Continued Litigation

The fairness of the settlement should also be considered in relation to the likely

complexity, length and expense of this litigation if it had not settled.  ERISA class action cases

involving the prudence of investing in employer stock when the employer is experiencing

financial or operating difficulties are a fairly new development in American class action

jurisprudence.  Had the case not settled this case would undoubtedly presented many complex

and, in certain instances, unprecedented issues for determination by this Court as a matter of law.

That there was already the settled Securities Action, with its effect on this action, only rendered

this ERISA case unusually complex, and it would have remained unusually complex going

---

[4]Affidavits or declarations setting forth the competence and experience of the several
Plaintiff's Counsel firms in this case are being filed with the Court in connection with Plaintiff's
Motion for an Award of Attorneys' Fees and Reimbursement of Expenses Out of the Settlement
Fund and for an Award to the Plaintiff.

forward.  The continued length of the case also supports settlement.  As noted above, this case settled early in the discovery process, and had it not been settled there would have likely been many months of fact discovery and expert discovery before the case would have been realistically ready for trial.  This further fact and expert discovery, moreover, would have resulted in substantial out-of-pocket costs for both Plaintiff and Defendants and, indirectly, to members of the class in this case, who may or would have had their recoveries reduced by such further discovery costs had a settlement or other recovery been obtained later in the litigation.

**The Degree of Opposition Expressed by Those Affected by the Settlement**

This Court has set October 7, 2005 as the deadline for class members to object to any or all of the terms of the proposed settlement (or to object to Plaintiff's motion for an award of attorneys' fees, expenses and an award to the Plaintiff).  No objections to the settlement, or to the request for attorneys' fees, expenses or award to the Plaintiff have been received as of this date (*see* Mills Declaration ¶ 8).  The fact that absolutely no objections have been received, after over 11,000 notices were mailed out to class members and a separate notice was published in *USA Today* (*see* Affidavit of Michael Rosenbaum Re: Mailing and Publication of Notice, ¶¶ 5, 7 and 8), strongly supports the fairness of the proposed settlement.[5]

**Conclusion**

The Court should grant final approval to the proposed $9,975,000 settlement of this case and enter the Final Judgment which is annexed to the accompanying Motion.

---

[5]Plaintiff's Counsel shall, of course, advise the Court at or in advance of the Final Fairness Hearing which is scheduled to be held on October 15, 2005 if any objections to either the settlement, or the request for attorneys' fees, expenses or the award to the Plaintiff are received after the date of this Memorandum.

DATED:  October 7, 2005

STULL, STULL & BRODY

By:_____

        Edwin J. Mills
6 East 45th Street
New York, New York 10017
Telephone:     (212) 687-7230

KELLER ROHRBACK L.L.P.
Lynn Lincoln Sarko
T. David Copley
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
Telephone:     (206) 623-1900
Facsimile:     (206) 623-3384

PRICE WAICUKAUSKI RILEY
 & DeBROTA, LLC
Henry J. Price, Attorney No. 58822-49
Ronald J. Waicukauski, Attorney No. 1089-53
301 Massachusetts Avenue
Indianapolis, Indiana 46204
Telephone:     (317) 633-8787

ROBERT D. ALLISON & ASSOCIATES
Robert D. Allison
122 South Michigan Avenue, Suite 1850
Chicago, Illinois 60603
Telephone:     (312) 427-7600

*Attorneys for Plaintiff*